**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

KUNTA GRAY,

Plaintiff,

v.

MARISSA ROBBINS,

Defendant.

CASE NO. 3:23-CV-833-SJF

**OPINION and ORDER**

On September 13, 2023, Plaintiff Kunta Gray, an inmate at the Miami Correctional Facility ("MCF") proceeding with counsel, filed this case under 42 U.S.C. § 1983. [DE 1]. Mr. Gray's operative amended complaint named as defendants Warden William Hyatte, Deputy Warden Jacquelin Scaife, Case Manager Owens, and Correctional Officers Kirby, McCullum, Cruz, Wallace, Rife, McGee, and Robbins. [DE 6]. Defendants moved to dismiss Mr. Gray's amended complaint, which the Court granted in part. Mr. Gray was permitted to proceed only against Defendant Marissa Robbins on an Eighth Amendment claim for allegedly failing to protect him from an attack by another inmate, James Jenkins, on March 18, 2022. [DE 26]. Defendant Robbins filed her Answer and Affirmative Defenses on August 29, 2024, contending that Mr. Gray failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [DE 30 at 15, ¶ 1].

On April 6, 2026, after a period of discovery was conducted and closed, Defendant Robbins moved for summary judgment on multiple grounds: first, on her affirmative defense that Mr. Gray failed to exhaust his available administrative remedies as required by the PLRA; next, that no reasonable jury could find she was deliberately indifferent to a substantial risk of serious harm; and finally, that she is entitled to qualified immunity. [DEs 65–67]. Mr. Gray responded on April 27, 2026, and alternatively asked the Court to defer ruling under Fed. R. Civ. P. 56(d). [DEs 71–74]. Mr. Gray also moved to seal an exhibit to his response consisting of his medical records. [DE 76]. Defendant Robbins replied on May 11, 2026. [DE 77]. These motions are fully briefed and ripe for ruling.

With the parties' consent to the undersigned magistrate judge's jurisdiction under 28 U.S.C. § 636(c), the Court now enters the following opinion and order addressing all pending motions. [DE 40, DE 41]. For the reasons explained below, the Court: (1) strikes Exhibit 4 and therefore denies Mr. Gray's Motion to Seal [DE 76] as moot; (2) denies Mr. Gray's request to defer ruling under Rule 56(d); and (3) grants Defendant Robbins' Motion for Summary Judgment [DE 65] because the undisputed facts show that Mr. Gray did not exhaust his available administrative remedies.

## I. Factual Background

The following facts are undisputed.[1] At all relevant times, the Indiana Department of Correction ("IDOC") maintained its Offender Grievance Process at MCF,

[1] Unless otherwise noted, the facts are drawn from Defendant's Statement of Material Facts [DE 67] and the evidence cited therein, and are either admitted in Mr. Gray's Response to Defendant's Statement of Material Facts [DE 73] or not genuinely disputed with citation to admissible evidence. *See* Fed. R. Civ. P. 56(c)(1),

and that process was available to Mr. Gray. [DE 67 ¶¶ 35, 39]. The process has three steps: submission of (1) a formal grievance; then (2) a written appeal to the Warden or designee; and finally, (3) a written appeal to the Department Offender Grievance Manager. [*Id.* ¶ 36; DE 65-3 at 3]. An inmate must use the proper forms and complete each step timely. [DE 67 ¶ 37].

For step one, a grievance must be submitted "no later than ten (10) business days from the date of the incident giving rise to the complaint or concern." [DE 65-3 at 9; DE 67 ¶ 38]. Grievance forms are collected daily, the grievance office notes the date each form is received, and that receipt date is the operative date for processing. [DE 67 ¶¶ 42, 47]. The Offender Grievance Specialist may return a grievance that was not submitted within the ten-day limit. [DE 65-3 at 10]. An inmate whose delay results from extenuating circumstances must document the reason for the delay in writing and submit it for review. [*Id.* at 14; DE 67 ¶ 49]. If an inmate does not receive a grievance response within the time allowed, he may proceed to the next step of the grievance process as though the grievance had been denied. [DE 67 ¶ 53]. Tort claims seeking monetary compensation are not grievable. [DE 65-3 at 4].

On March 18, 2022, inmate James Jenkins stabbed Mr. Gray in MCF's I-Housing Unit while Mr. Gray was on his way to a medical pass. [DE 67 ¶¶ 7–8]. Mr. Gray's deadline to grieve the attack was thus April 1, 2022. [*Id.* ¶¶ 40–41]. Mr. Gray did file one

---

(e)(2); N.D. Ind. L.R. 56-1(b)(2); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015). Because the Court resolves the summary judgment motion on exhaustion, it recites only the facts relevant to that issue.

grievance about the attack. [*Id.* ¶ 43; DE 65-8 at 29]. Mr. Gray dated his grievance March 18, 2022, but the grievance office did not receive it until May 11, 2022. [DE 67 ¶ 45]. Mr. Gray testified that he does not know when he turned in the grievance and has nothing showing that he submitted it before May 12, 2022. [DE 65-8 at 30; DE 67 ¶ 46]. The grievance office processed the grievance as untimely and returned it to Mr. Gray as late on May 12, 2022. [DE 67 ¶ 48]. When asked whether he received that return, Mr. Gray answered, "I think so." [DE 65-8 at 33].

Mr. Gray then attempted to move to the second step of the process: an appeal to the Warden or designee. Under the policy, an inmate begins that appeal by submitting a grievance appeal form to the Offender Grievance Specialist, and that submission serves as notice that the inmate wants to appeal to the Warden/designee's office. [DE 65-3 at 12]. He submitted a grievance appeal form, which the grievance office received and returned on May 16, 2022. [DE 67 ¶¶ 50, 52]. The form stated Mr. Gray had not received a response to his grievance, but it did not explain why the grievance was late or why it should be accepted anyway. [*Id.* ¶¶ 51, 54–55; DE 65-8 at 35]. The grievance office returned the form because appeals are granted by the grievance specialist only and because it lacked Mr. Gray's DOC number. [DE 67 ¶ 56]. Mr. Gray resubmitted a photocopy of the same form with his DOC number added. [*Id.* ¶¶ 57–58]. On June 13, 2022, the grievance office responded that Mr. Gray had until May 23, 2022, to sign and appeal the prior decision and had not done so. [*Id.* ¶¶ 59–60]. That response referenced a different grievance number, although the attached materials concerned the March 18,

2022, attack. [*Id.* ¶ 62]. After noticing the incorrect number, Mr. Gray took no further action. [*Id.* ¶ 63; DE 65-8 at 38].

The record shows that his submissions were never accepted as a proper appeal to the Warden or designee, and that he never appealed to the Department Offender Grievance Manager, the third step in the grievance process. [DE 67 ¶¶ 64–65]. Instead, Mr. Gray separately submitted a tort claim notice to the state in June 2022. [DE 71 at 2; DE 72 at 10].

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in the party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The Court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is a material dispute that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is

the court "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the allegations or denials in its pleadings; it must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322–23; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotation omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## III. Discussion

Before turning to Defendant Robbins' motion, the Court addresses two preliminary matters: Mr. Gray's Motion to Seal and his request to defer ruling under Rule 56(d).

### A. Mr. Gray's Motion to Seal [DE 76]

Mr. Gray moves to seal his medical records, which he designates as Exhibit 4 in opposition to summary judgment. [DE 76; DE 71 at 1]. "The clerk may not maintain a filing under seal unless authorized to do so by statute, court rule, or court order." N.D. Ind. L.R. 5-3(a). Mr. Gray identifies no statute or rule authorizing sealing, so the Court

must determine whether good cause exists. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944–46 (7th Cir. 1999). "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006).

Mr. Gray's motion does not make that showing. It offers no reason for sealing. [DE 76 at 1]. It is also internally inconsistent, as its title seeks to seal "Exhibit 4 of the Appendix," while its body and prayer for relief seek to seal "Exhibit B of the Complaint." [*Id.*]. The Court recognizes that medical records may contain sensitive information that could justify sealing on a proper showing. But the Court cannot find good cause on a motion that neither identifies the document with precision nor explains why it should be withheld from public view. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002).

Moreover, the Court's decision granting summary judgment is based on exhaustion of administrative remedies, not the merits of Mr. Gray's claim. Mr. Gray appears to have included these records as part of his substantive claims only. Since the Court is not addressing them here, there is no reason to maintain them on the docket as filed. Thus, the Court strikes the medical records Mr. Gray filed on April 27, 2026, and denies the motion to seal as moot.

### B. Mr. Gray's Rule 56(d) Request

In his response to Defendant Robbins' motion, Mr. Gray opposes summary judgment and alternatively asks the Court to defer ruling so that he may obtain

surveillance video, internal investigation reports, staff logbooks, recorded staff interviews, inmate Jenkins' classification and housing records, and grievance "chain-of-custody" and "misassignment" records. [DE 72 at 13–14; DE 74].

Rule 56(d) permits the Court to defer or deny a summary judgment motion when a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The nonmovant must make a good faith showing that he cannot respond without further discovery and must identify the specific evidence that would create a genuine issue of material fact. *See* *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). Relief is also properly denied where the party was not diligent in pursuing discovery. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057–59 (7th Cir. 2000).

Even assuming the request is supported by the affidavit or declaration Rule 56(d) requires, it fails. As explained below, the Court resolves Defendant Robbins' motion on exhaustion. Most of the discovery Mr. Gray identifies goes only to what prison staff knew about Mr. Jenkins, which is a merits question the Court need not reach. Such discovery could not show Mr. Gray timely grieved the attack. The remaining category, grievance records, is already before the Court. Mr. Gray himself designated his grievance, the grievance returns, his appeal paperwork, the grievance policy, and the grievance specialist's affidavit. [DE 71 at 2]. Mr. Gray does not identify what additional grievance record exists or explain how it would show that he submitted his grievance by April 1, 2022, particularly when he testified he does not know when he submitted it. [DE 65-8 at 30]. Nor has Mr. Gray shown that such records could not have been

obtained before fact discovery closed on February 13, 2026. [*See* DE 77 at 2–3]; *see also* *Kalis*, 231 F.3d at 1058. Mr. Gray's Rule 56(d) request will be denied.

### C. Exhaustion of Administrative Remedies

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Its "mandatory language means a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016); *see also* *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The PLRA requires proper exhaustion, which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A prisoner therefore cannot satisfy the PLRA by "filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83–84.

The Seventh Circuit takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A suit filed before exhaustion must be dismissed, and "the district court lacks discretion to resolve the claim on the merits." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Failure to exhaust is an affirmative defense that the defendant must prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015), *overruled on other*

*grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (en banc). A prisoner need exhaust only available remedies, and a remedy is unavailable when it "operates as a simple dead end," is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Defendant Robbins has carried her burden to show that Mr. Gray failed to exhaust his available grievance remedies. The undisputed evidence shows that the Offender Grievance Process was available to Mr. Gray and that it required him to grieve the March 18, 2022, attack by April 1, 2022. Even so, the record shows that the grievance office did not receive his grievance until May 11, 2022—nearly six weeks after the deadline. [DE 67 ¶¶ 38–41, 45, 47]. Mr. Gray offers no evidence that he submitted it earlier, testifying that he does not know when he turned it in and putting forth nothing showing he did so before May 11, 2022. [DE 65-8 at 30].

The grievance does include a handwritten date of March 18, 2022. [DE 67 ¶ 45; DE 65-5 at 1–2]. But the date Mr. Gray wrote on the form shows when he dated it, not when he submitted it. For grievance-processing purposes, the operative date is the date the grievance is received by the grievance office, not the handwritten date on the form. [DE 67 ¶ 47]. The grievance office rejected his grievance expressly because it was late, never reaching its merits. [DE 67 ¶ 48]. A missed deadline is a procedural shortcoming that amounts to a failure to exhaust where, as here, prison administrators explicitly relied on it. *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *see also Maddox v. Love*, 655

F.3d 709, 721–22 (7th Cir. 2011). Although the policy allowed Mr. Gray to show good cause for his delay, he never attempted to do so. [DE 67 ¶¶ 49, 54–55; DE 65-8 at 35]. And although Mr. Gray did attempt to appeal under the second step of the process, there is no evidence he ever appealed to the Department Offender Grievance Manager, the third and last step of the process. [DE 67 ¶ 65].

In sum, Mr. Gray did not file his grievance "[a]t the time" the prison's rules required. *Pozo*, 286 F.3d at 1025. An untimely grievance does not satisfy the PLRA. *Woodford*, 548 U.S. at 83–84. Nor did he complete all the steps of the process. [DE 67 ¶¶ 65–66]; *see Pozo*, 286 F.3d at 1023–24.

Mr. Gray's arguments in response to Defendant's motion do not create a genuine dispute. He first contends that, as in *Jones v. Lamb*, 124 F.4th 463 (7th Cir. 2024), the grievance office's handling of his submissions creates a factual dispute about availability, pointing to the policy provision that allows an inmate to appeal as though his grievance had been denied when no response is received. [DE 72 at 10–12]. But in *Jones*, the inmate submitted sworn evidence that he never received the decisions he needed to pursue his administrative appeals. 124 F.4th at 469. Mr. Gray's failure occurred at the first step. His grievance was already late before any response could have been due, and the no-response provision presupposes a properly submitted grievance. [*See* DE 65-3 at 12]. Moreover, unlike the inmate in *Jones*, Mr. Gray testified that he thinks he received the return of his grievance as untimely. [DE 65-8 at 33].

Mr. Gray next contends the grievance office rejected his appeal paperwork for technical reasons and later referenced the wrong grievance number [DE 72 at 11]. But

these events do not show that the process was a "simple dead end" or that officials thwarted Mr. Gray "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. The grievance-number mix-up Mr. Gray describes [DE 65-8 at 36–38] was a later clerical error that could not have made the process unavailable for a grievance that was already untimely. And Mr. Gray points to no evidence that anyone at MCF misled him about the ten-day deadline or prevented him from submitting his grievance. *Cf. Kaba*, 458 F.3d at 684–86.[2]

Finally, neither Mr. Gray's tort claim notice nor his theory of "substantial compliance" [DE 72 at 11] saves his claim. Exhaustion requires use of the prison's own process "in the place . . . the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. IDOC recognizes only one grievance process, and that process expressly excludes tort claims seeking monetary compensation. [DE 65-3 at 3–4]. And the PLRA requires proper exhaustion, not substantial compliance. *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002); *see also Woodford*, 548 U.S. at 90–91; *Dole*, 438 F.3d at 809. Courts may not read exceptions into the statute's mandatory text. *Ross*, 578 U.S. at 639–40; *Booth*, 532 U.S. at 741 n.6.

In sum, the undisputed facts show that the Offender Grievance Process was available to Mr. Gray and that he did not properly exhaust it before filing suit. Because

---

[2] Mr. Gray's brief also references "an appeal date of 4/25/2022 noted in the record." [DE 72 at 10]. Mr. Gray does not explain the significance of this date or argue that it shows he submitted his grievance by April 1, 2022. Perfunctory and undeveloped arguments are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *Nelson*, 657 F.3d at 590. In any event, a date noted on a form does not establish when the form was submitted, and it cannot overcome Mr. Gray's own testimony that he does not know when he turned in his grievance. [DE 65-8 at 30].

no material fact bearing on exhaustion is genuinely disputed, no evidentiary hearing is required. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Defendant Robbins' motion for summary judgment will be granted. Because the Court "lacks discretion to resolve the claim on the merits" absent exhaustion, *Perez*, 182 F.3d at 535, it does not reach Defendant Robbins' remaining arguments. And because "all dismissals under § 1997e(a) should be without prejudice," *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004), this case will be dismissed without prejudice.

## IV. Conclusion

For these reasons, the Court now:

(1) **STRIKES** Plaintiff's Exhibit 4 [DE 74-4];

(2) **DENIES AS MOOT** Plaintiff's Motion to Seal [DE 76];

(3) **DENIES** Plaintiff's request to defer ruling under Fed. R. Civ. P. 56(d) [DEs 72, 74];

(4) **GRANTS** Defendant's Motion for Summary Judgment [DE 65];

(5) **DISMISSES** this case **WITHOUT PREJUDICE** under 42 U.S.C. § 1997e(a); and

(6) **DIRECTS** the Clerk to enter judgment accordingly and to close this case.

**SO ORDERED** this 6th day of November 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge